ZIEGLER v. MARINE TRANSPORT
LINES, Inc. et al.

No. 37.

District Court, E. D. Pennsylvania.
Nov. 20, 1947.

Martin J. Vigderman (of Freedman, Landy & Lorry), of Philadelphia, Pa., for libellant.

Robert Cox (of Krusen, Evans & Shaw) and Gerald A. Gleeson, U. S. Atty., both of Philadelphia, Pa., for respondent.

WELSH, District Judge.

1. On June 30, 1946, and for a brief period thereafter, the Libellant was a seaman in the United States Merchant Marine.

2. Respondent, United States of America, is a sovereign which has by law consented to be sued, and Respondent, United States Maritime Commission, is a Governmental Agency of the United States and successor to the War Shipping Administration.

3. The United States of America, through the War Shipping Administration, was on June 30, 1946, and thereafter, the owner of the S. S. "Warren Delano".

4. On June 30, 1946, and thereafter, the Respondent, Marine Transport Lines, Inc., managed, operated and conducted the business of the S. S. "Warren Delano" as general agent of the United States of America, in foreign commerce.

5. On or about May 1, 1946, at Philadelphia, Pa., Libellant signed shipping articles as Third Assistant Engineer for a twelve-month foreign voyage on the S. S. "Warren Delano".

6. Libellant's rate of pay was $247.00 per month or $8.23 per day.

7. On or about June 30, 1946, in the course of his employment and while the vessel was in navigable waters, libellant became suddenly ill and experienced severe abdominal pains.

8. On the morning of June 30, 1946, the vessel was at Galveston, Texas, where there is a United States Public Health Service Station and Marine Hospital, where competent medical and surgical treatment were available.

9. At breakfast on the morning of June 30, 1946, the Libellant told the Purser/Pharmacist's Mate, Paul R. Dodds, that he had abdominal pains.

10. The Purser believed that the Libellant had cramps and told him he would prescribe some medicine after breakfast.

11. Later in the morning of June 30, 1946, the Purser saw Libellant on watch and observed that he was unable to work, having testified as follows:

"About half past eleven on that morning when I was called down at the engine room, and he was at—he was working in the engine room, and he looked like he was, well, unable to work".

Despite this fact, the Purser did nothing although he knew that he, the Purser, had the duty to care for the health of all seamen aboard the S. S. "Warren Delano" and also knew that a physician, the Quarantine Doctor, was on board said ship on the morning of June 30, 1946.

12. On the afternoon of June 30, 1946, Libellant's pain persisted, and he saw the Purser. The Purser gave the Libellant some paregoric, a mixture which is administered to persons suffering from firemen's cramps. Firemen's cramps result when overheated persons drink cold water.

13. On the evening of June 30, 1946, the Purser examined the Libellant. The extent of the examination was relatively thorough. However, a thermometer, which is an essential part of a ship's medical equipment, was not available on the vessel on the evening of June 30, 1946. The thermometer, at the time of the examination, was locked up in the Chief Mate's room.

14. On July 1, 1946, the Libellant again contacted the Purser. At this time, the Purser supplied Libellant with a sufficient quantity of paregoric and sulfathiazole as a prophylaxis against an appendicitis attack.

15. On July 1, 1946, shore liberty was granted to the ship's entire personnel, and the Captain provided free launch service between the ship and shore during that day. On that day, too, Libellant received a "draw", or advance of wages, from the Captain for the purpose of expenses incurred while ashore.

16. On July 2, 1946, Libellant's pains continued. On that date, the vessel grounded in the channel between Galveston and Houston, Texas. Following its grounding the ship was declared in peril, as the vessel was carrying a cargo of ammunition, and a Coast Guard Cutter continuously patrolled its vicinity, always remaining within hailing distance of the S. S. "Warren Delano".

17. On July 2, 1946, the Libellant again spoke with the Purser concerning his condition, and the Purser told the Libellant he would be all right if he kept up the treatment.

18. On July 3, 1946, Libellant's pains continued. In response to Libellant's request, the Captain furnished Libellant with a "Master's Certificate" and sent him ashore with Mr. Batey, Chief Mate, for further medical care, treatment and diagnosis.

19. Upon his arrival at the Galveston Marine Hospital, the Libellant was told to return on July 5, 1946.

20. The Libellant returned aboard the vessel at approximately 2 o'clock A.M., (July 4, 1946), at which time the Captain ordered him to return ashore where more efficient medical care could be afforded Libellant, if it were deemed necessary.

21. The Libellant went ashore and spent the morning in a hotel lobby, and returned to the hospital on July 4, 1946, and was again told to return to the hospital the following morning, July 5, 1946.

22. On July 5, 1946, Libellant went to the hospital and was examined. A diagnosis of acute appendicitis subsiding was made. Appendectomy was performed on July 8, 1946.

23. Libellant left the hospital on July 20, 1946, and was discharged from the vessel and paid off on July 26, 1946.

24. On July 26, 1946, the Libellant lodged a complaint with the United States Coast Guard against the Master and Purser of the vessel, in the matter of his recent appendicitis attack.

25. On or about July 29, 1946, Libellant reached his home which is located in Haddon Heights, New Jersey.

26. Libellant had his former job awaiting him, which entailed lifting heavy objects part of the time.

27. Libellant returned to his former employment on or about September 30, 1946.

## Discussion

A. In the first cause of action, Libellant alleges, as the basis for his recovery of damages, that the Respondents, by their agents, servants and employees, maintained and operated an unseaworthy vessel and were careless and negligent. The record does not substantiate the allegation of unseaworthiness and our discussion, therefore, is limited to the inquiries: were the Respondents negligent and, if so, was such negligence the proximate cause of Libellant's injuries or illness?

Libellant's first allegation is that the Respondents were negligent in failing to provide Libellant with safe, proper and competent personnel and adequate medical equipment. There is no evidence in the record to show that the vessel was manned by other than proper and competent personnel. The evidence with regard to the medical equipment reveals that the standard medical equipment for use on a War Shipping Administration Liberty Ship was on board the S. S. "Warren Delano". Accordingly, Libellant failed to sustain his first allegation.

Libellant's second and fourth allegations, in support of liability, charge that Respondents failed to provide Libellant with prompt, proper and adequate medical care and attention under the circumstances. In view of its special findings of fact, supra, the Court is of the opinion that it need not make extensive comment in disposing of these allegations.

The Purser knew that on the morning of June 30, 1946, a Quarantine Doctor was on board the S. S. "Warren Delano" and he knew, also, that the Libellant had been complaining of abdominal pains, and on the basis of these facts the Libellant argues that the Purser's failure to have the Libellant examined by the Quarantine Doctor constitutes a breach of the Purser's duty to take care of him. This argument does not appeal to us for the reason that Libellant also knew that the Quarantine Doctor was on board the vessel, and despite Libellant's assertion that he would have been examined by the Quarantine Doctor if he would have been able to obtain relief from his "watch", the fact is that the Quarantine Doctor remained on board the vessel until 1:30 P.M., and Libellant's "watch" terminated at twelve o'clock noon.

The Court has found that the thermometer, which is an essential part of the ship's equipment, was not available on the evening of June 30, 1946 when the Purser examined the Libellant and that said thermometer was locked up in the Chief Mate's room. The Court is of the opinion that there is imposed upon the responsible officers aboard a vessel the duty to have access to a thermometer at all times, and that a violation of this duty constitutes negligence. However, it is well established that to impose liability upon Respondents for a negligent act or omission it is necessary to prove that the negligent act or omission was the proximate cause of the injuries or illness. We hold that proximate cause has not been shown in the instant case and the Respondents are not liable. We base the foregoing conclusion on the fact that access to the thermometer on the evening the Purser examined the Libellant would not have altered the events subsequent to said examination. We are convinced that Purser's diagnosis would have been the same even if the thermometer had been available. The following day, July 1, 1946, the Purser had access to the thermometer and he took the Libellant's temperature and concluded that his condition was not serious. On July 5, 1946, the Marine Hospital at Galveston diagnosed Libellant's condition as acute appendicitis subsiding and it was not until July 8, 1946, that Libellant underwent an operation. Certainly, the foregoing undisputed facts substantiate the Purser's diagnoses made on June 30 and July 1, 1946.

However, the Libellant disputes the fact that he placed reliance upon the Purser's judgment and argues in support of liability (Libellant's third allegation of negligence) that he did not seek medical care and attention elsewhere because Respondents required and permitted Libellant to continue in the performance of his duties. The answer to this argument is that the undisputed facts are that Libellant performed all his duties during June 30, July 1, 2 and 3, and that Libellant performed his duties on each of the aforementioned days upon his own free will and that he was never ordered or required to work.

The answer to the inquiries propounded above are: Respondents were negligent in one respect, in failing to have access to a thermometer on the evening of June 30, 1946, when the Purser examined Libellant; but Respondents were not responsible for said negligent act because it was not the proximate cause of Libellant's injuries or illness.

B. In the second cause of action, Libellant claims wages and maintenance and cure.

### Maintenance and Cure

The duty to provide maintenance and cure is imposed by law on the relationship of the seaman to the vessel, arising from the contract of the parties. Cortes v. Baltimore Insular Line, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368; The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760. The liability exists without regard as to whether the seaman's employment or duties are the cause of the illness or injury and irrespective of any culpability or negligence on the part of the ship owner. Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; Loverich v. Warner Co., 3 Cir., 118 F.2d 690; The Point Fermin, 5 Cir., 70 F.2d 602.

The duty to provide maintenance and cure lasts as long as the seaman's need continues. Jones v. Waterman Steamship Corp., 3 Cir., 155 F.2d 992. We think that

the need for maintenance and cure in the instant case continued until September 1, 1946. The period for convalescence testified to by Respondents appears to us too short, and that testified to by Libellant too long.

The Court in its findings of fact found that Libellant was discharged from the vessel and paid off on July 26, 1946, and that he arrived at his home on July 29, 1946. Therefore, the Libellant is entitled to maintenance and cure from July 29, 1946 to September 1, 1946, inclusive, or for a period of 35 days. War Shipping Administration Operations Regulations 108, effective August 1, 1945, provides that licensed officers shall be paid maintenance and cure during periods of disability of not less than $4.00 nor more than $6.50 per day. We think Libellant is entitled under this Regulation as Third-Assistant Engineer to $5.00 per day, and consequently the total amount due the Libellant for maintenance and cure is $175.00, that is, $5.00 per day for 35 days.

## Wages

The facts supporting maintenance and cure give rise to a concurrent liability for wages. The Osceola, supra; Calmar Steamship Corp. v. Taylor, supra. This obligation is restricted to the term of the employment as specified by the shipping articles. Jones v. Waterman Steamship Corp., supra. In the instant case, the obligation could have continued for a period of twelve months, as the shipping articles provided for a twelve-month voyage, and further provided for the earlier termination of the voyage at the option of the Captain. However, the Libellant here is entitled to wages only up to and including September 1, 1946 as we have already decided that on that date Libellant's convalescence should have terminated and he should have secured employment. We conclude therefore, the Libellant is entitled to wages from July 29, 1946 to September 1, 1946, or for a period of 35 days. As Libellant's rate of pay was $8.23 per day the total amount due the Libellant for wages is $288.05.

It is argued by the Respondents that the Libellant is entitled to wages only up to and including August 21, 1946, for the Shipping Articles were closed out on that date. The identical argument was urged in other cases (Shields v. United States, D. C., 73 F.Supp. 862; Jones v. Waterman Steamship Corp., supra), and it was held that for the purposes of paying wages to a seaman who is injured or becomes ill on board a ship the term of the employment is determined by the original shipping articles and not by the actual termination of the voyage. Of course, the obligation to pay wages to a seaman who is injured or becomes ill on board a ship is terminated by the seaman's return to employment or as in the instant case by his ability to return to employment.

## Conclusions of Law

1. Libellant failed to prove allegation of unseaworthiness.

2. Respondents were negligent in only one respect—in failing to have access to a thermometer on the evening of June 30, 1946, when the Purser examined Libellant.

3. Respondents are not responsible for said negligent act because it was not the proximate cause of Libellant's injuries or illness.

4. Libellant is entitled to maintenance and cure for a period of 35 days (from July 29 to September 1, 1946, inclusive) at the rate of $5.00 per day, or in the total amount of $175.00.

5. Libellant is entitled to wages for a period of 35 days (from July 29 to September 1, 1946, inclusive) at the rate of $8.23 per day, or in the total amount of $288.05.

An order may be entered in conformity with the foregoing opinion, dismissing Libellant's first cause of action and granting his second cause for maintenance and cure and wages in the amount of $463.05. Interest and costs will be assessed against the Respondents.