Louis CREPPEL, Jr.

v.

J. W. BANTA TOWING, INC.

Civ. A. No. 2367.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

March 8, 1962.

Cobb & Brewer, Baton Rouge, La., for plaintiff.

Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for defendant.

WEST, District Judge.

This civil action is brought by complainant, Louis Creppel, Jr., a seaman, seeking to recover from respondent, J. W. Banta Towing, Inc., the sum of $30,000 in damages under the provisions of the Jones Act, 46 U.S.C.A. § 688. In the alternative, complainant seeks to recover the same amount under the general maritime law for damages allegedly sustained by him and allegedly resulting from the unseaworthiness of the vessel, M. V. Kishwaukee, on which he was injured while employed as a member of the crew. Complainant also demands, under the general maritime law, the sum of $25,000 for maintenance and cure, and the recovery from wages allegedly lost as a result of his accident and injury.

This case was tried to the Court alone, without a jury, on January 16, 1962, after which the Court made the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1.

The complainant, Louis Creppel, Jr., is a resident of the full age of majority of the State of Louisiana, and the respondent, J. W. Banta Towing, Inc., is a Louisiana corporation domiciled in Iberville Parish, Louisiana.

2.

On and prior to May 1, 1960, complainant was employed by respondent, J. W. Banta Towing, Inc., as a captain or master aboard the steel-hulled, pilot-house-controlled, diesel-powered tug, M. V. Kishwaukee, at a salary of $20 per day; he was paid on the fifteenth day and the last day of each month for the days actually worked during the preceding half month; said employment was not by written contract, and no specific term of employment was agreed upon. The Kishwaukee did not embark upon any voyages while complainant was employed thereon, and her activities were limited to a specific area in close proximity to the Cargill Docks on the Mississippi River at Baton Rouge, Louisiana. Complainant did not live on the vessel but lived ashore and merely came aboard each day to work his watch. Complainant had been so employed for about two and one-half months prior to May 1, 1960, and when he was on duty aboard the Kishwaukee, he was in command as the captain or master of the vessel.

3.

The M. V. Kishwaukee was owned and operated by respondent, J. W. Banta Towing, Inc., and was equipped with two large searchlights, two forward floodlights located on the front of the wheelhouse, one floodlight located on the port side of the wheelhouse, one floodlight located on the starboard side of the wheelhouse, two floodlights located on the stern of the vessel, and the regular running lights required by Coast Guard regulations. During the time complainant was so employed, the Kishwaukee was used to move and moor a fleet of grain barges between the area of the Baton Rouge Grain Elevator on the Mississippi River and the nearby barge fleet, composed of 75 to 100 barges owned by Cargill, Inc.

4.

That on the night of April 30, 1960, and during the early morning of May 1, 1960, the complainant was in charge of said vessel as captain or master, and his crew consisted of two deckhands, Robert Canella and James Chaisson, and one engineer, Leroy Burnthorn.

5.

Complainant and his crew came aboard the Kishwaukee for duty at midnight on

April 30, 1960, and were scheduled to remain on duty until 12:00 o'clock noon on May 1, 1960. At about 1:00 o'clock a. m. on May 1, 1960, the Kishwaukee was tied up alongside the fleet of barges when the complainant left the pilot-house and proceeded to walk across the decks of several of the barges tied up alongside the Kishwaukee for the purpose of inspecting the lines to be sure that the barges were securely tied. While there were no witnesses who actually saw the complainant slip and fall, nevertheless, the Court finds as a fact that as the complainant was returning to the Kishwaukee, walking across the decks of the adjacent barges, he slipped and fell on the deck of one of the grain barges, injuring his back, left leg and left shoulder.

### 6.

At the time the complainant slipped and fell, one deckhand, Robert Canella, was in the wheelhouse pursuant to complainant's orders, lighting the area of the barges with at least one floodlight, and possibly others, and the other deckhand, James Chaisson, who had been assisting the complainant in inspecting the barges, was walking ahead of complainant, preceding him on the way back across the barges to the Kishwaukee. Chaisson did not see complainant fall, but turned around in time to see complainant getting up from the deck of one of the barges.

### 7.

It had rained hard just prior to this accident, and was in all probability raining at the time of the accident, and the decks of the barges and the deck of the Kishwaukee were wet and slippery. Also, even though the testimony is not conclusive, there was in all probability some loose particles of grain on the decks of some of the barges, including the one on which the complainant fell, and the complainant was fully aware of the slippery condition of the decks of these barges before and at the time he commenced and carried out his inspection tour of the barges.

### 8.

That while complainant testified that there were no flashlights available for the use of the crew members on the M. V. Kishwaukee, this Court concludes from the evidence that at least the deckhand, Chaisson, who was with complainant when he fell on the deck of one of the barges, did have a flashlight and was using it at the time of the accident, and that the other deckhand, Robert Canella, pursuant to complainant's orders, had at least one of the tug's spotlights or floodlights trained so as to light up the area where the complainant and Chaisson were walking at the time of the accident. While Canella did not testify in person at the trial of this case, his testimony, introduced by deposition, strongly indicates that both he and the complainant did in fact have flashlights, and that they were using them at the time of the accident. He further testified that the "big spotlight" on the "boat" was "flashing out there". The Court therefore concludes that there was ample lighting available on the Kishwaukee, and that suitable lighting was, in fact, being utilized by complainant and his crew at the time of the accident.

### 9.

The Court concludes that complainant's fall was caused by the wet and slippery condition of the deck of the barge on which complainant slipped and fell, and that this wet and slippery condition was caused by the rain falling prior to and at the time of the accident, and was not in any way caused by a lack of proper lighting on the Kishwaukee, nor was it caused by the unavailability of flashlights or other lighting for the use of the crew. Proper lighting was available on the Kishwaukee and was being used at the time of the accident in accordance with orders and instructions emanating directly from the complainant himself, who, as captain or master of the Kishwaukee, was in complete charge of the operation. Complainant failed to prove any negligence whatsoever on the part of respondent, or on the part of anyone for whom respondent could be

held legally liable, much less proving any negligence proximately causing complainant's accident.

### 10.

There was no evidence introduced which would lead this Court to conclude that the Kishwaukee or its gear or appurtenances were in any way unseaworthy. Furthermore, even if it were to be concluded that there was an absence of proper lighting in the area of the accident, the evidence falls far short of showing that such absence of lighting was a proximate cause of the complainant's accident.

### 11.

Complainant reported his accident and injury to James W. Banta, President of respondent, J. W. Banta Towing, Inc., at about 9:00 o'clock a. m. on the morning following the night of the accident, that is to say, at about 9:00 o'clock a. m. on May 1, 1960. While the testimony is in conflict as to whether or not Mr. Banta offered medical aid to the complainant, the testimony most favorable to the defendant is that he suggested that the complainant go to Dr. Blunck, whom he referred to as his "company doctor". It was never suggested by Mr. Banta that complainant report to the Marine Hospital in New Orleans, nor was there any evidence to establish that the complainant was advised that there was a doctor employed by the Marine Hospital present in Baton Rouge. While Mr. Banta testified that he suggested that the complainant go to Dr. Blunck for treatment, the complainant denies this and the Court concludes that it is highly doubtful that any such suggestion was made to the complainant. The Court concludes that the complainant was left to find his own medical aid, which he did by going to Dr. Coco, Dr. Cracraft, and the Baton Rouge General Hospital. Furthermore, even after Mr. Banta learned that complainant was confined to the Baton Rouge General Hospital, he did not suggest that complainant go instead to the Marine Hospital in New Orleans, but proceeded to inform the Baton Rouge General Hospital that J. W. Banta Towing, Inc. would not be responsible for complainant's hospital or doctors bills, and that the complainant was not in the employ of J. W. Banta Towing, Inc. Complainant was confined to the Baton Rouge General Hospital for a period of eight days.

### 12.

Complainant was involved in an automobile accident during the month of February, 1960, but this automobile accident in no way contributed to the injury and disability complained of by the complainant following his accident aboard the Kishwaukee on the morning of May 1, 1960.

### 13.

Considering the medical reports filed in evidence by agreement of counsel, and despite complainant's testimony to the effect that he was disabled for six months, the Court concludes that complainant was disabled, or partially disabled, for a maximum period of three months as a result of the accident complained of. The longest anticipated period of disability stated by any of the doctors who examined or treated complainant was "two to three months," and it is significant to note that the last doctor to be seen by complainant for treatment, insofar as this record is concerned, was Dr. Cracraft, who last saw him on June 8, 1960, or approximately five weeks following the accident. While complainant testified that he had gone to "some doctors" in Dallas, Texas for about four months following the accident, the Court cannot overlook the fact that no reports of these doctors were offered in evidence, nor was any demand made by the complainant for reimbursement of the cost of treatment by such doctors. This Court simply does not believe that any medical treatment was sought by or rendered to complainant after June 8, 1960, as a result of this accident.

### 14.

The complainant was earning $20 per day while he was working for the re-

spondent, and based upon his earnings during the two and one-half months of his employment with respondent prior to the accident, complainant could reasonably have been expected to earn $300 each fifteen days while so employed.

### 15.

Complainant either paid or became liable for the payment of $343 for medical and hospital expenses resulting from the accident of May 1, 1960, and by agreement of counsel, the amount of $8 per day is to be considered a reasonable amount for maintenance during the period of disability for which maintenance may be recoverable.

## CONCLUSIONS OF LAW

This Court has jurisdiction of the parties and the subject matter of this action under the provisions of Title 46 U.S.C.A. § 688, and under its general admiralty and civil jurisdiction.

### 1.

In the absence of a showing of negligence on the part of respondent, or on the part of someone for whom respondent could be held legally liable, complainant could have no valid claim against respondent under the provisions of Title 46 U.S.C.A. § 688, commonly referred to as the Jones Act, for damages resulting from personal injuries sustained by him while a member of the crew of the M. V. Kishwaukee. Since this Court has concluded from the evidence that complainant has failed to prove any negligence on the part of the respondent, or on the part of anyone for whom respondent could be held legally liable, which was the proximate cause of the injuries sustained by him on May 1, 1960, he cannot recover damages from respondent under the provisions of the Jones Act. Elliott v. Jones and Laughlin Steel Corp., D.C., 166 F.Supp. 731, affirmed 3 Cir., 259 F.2d 959; De Zon v. American President Lines, 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1067.

### 2.

Under the general maritime law, while the respondent did not have a duty to furnish complainant with a completely accident free ship, it did have a duty to furnish complainant with a seaworthy vessel equipped with appurtenances and gear reasonably fit for their intended use. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed. 2d 941. In order for complainant to recover damages under the general maritime law, he must carry the burden of proving that the ship on which he was injured, or its gear or appurtenances, were unseaworthy, and that such unseaworthiness was the proximate cause of his injury. Mahnich v. Southern Steamship Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561; Beadle v. Spencer, 298 U.S. 124, 56 S.Ct. 712, 80 L.Ed. 1082; Poignant v. United States, 2 Cir., 225 F.2d 595; Pate v. Standard Dredging Corp., 5 Cir., 193 F.2d 498. The owner of the vessel and the employer of the seaman has every right to expect a seaman to cope with the ordinary hazards that must prevail even on a seaworthy vessel. Colon v. Trinidad Corp., D.C., 188 F.Supp. 97. Since the Court has found as a matter of fact, from the evidence adduced at the trial of this case, that neither the M. V. Kishwaukee nor her gear or appurtenances were in any way unseaworthy, much less being unseaworthy to such an extent as to be a proximate cause of complainant's injuries, and that at the time of the accident complainant was exposed to nothing other than the ordinary hazards encountered on a vessel in inclement weather, his claim for damages based upon alleged unseaworthiness of the Kishwaukee, her gear and appurtenances, must be denied.

### 3.

It is not necessary for complainant to prove negligence or unseaworthiness in order to be entitled to maintenance and cure. It is only necessary for him to show that he, as a member of the crew of the vessel, was injured while in the service of the vessel, and that he did in fact require maintenance and cure during his period of disability. Calmar Steamship Corp. v.

Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; Bay State Dredging and Contracting Co. v. Porter, Cir., 153 F.2d 827; the E. H. Russell, 2 Cir., 42 F.2d 568. This, complainant has done. It has been concluded from the evidence that complainant was injured while a member of the crew of the Kishwaukee, and in the service of the ship, and it has been concluded as a fact that complainant was justified in seeking his own medical attention. It is well settled that a seaman's right to maintenance and cure extends to the point where maximum cure has been attained, and that this point must be determined by reference to all of the facts of the particular case. Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; Muruaga v. United States, 2 Cir., 172 F.2d 318; Montilla v. United States, D.C., 70 F.Supp. 181; Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850; Ziegler v. Marine Transport Lines, D.C., 78 F.Supp. 216.

After carefully considering all of the facts and circumstances as presented by the evidence in this case, it has been concluded that complainant was disabled for a maximum period of three months following his accident of May 1, 1960. He is thus entitled to recover maintenance at the rate of $8 per day for the three months of his disability, minus the eight days during which he was confined to the Baton Rouge General Hospital, or for a period of eighty-two days, in the total sum of $656. The cost of complainant's maintenance for the eight days that he was confined in the Baton Rouge General Hospital will be included in the element of cure for which the respondent is also liable. It was established that the complainant either paid or became liable for medical expenses, including the cost of his confinement to the Baton Rouge General Hospital for a period of eight days, in the total amount of $343. He is entitled to judgment against respondent for the cost of cure in that amount.

### 4.

Complainant also demands recovery of wages allegedly lost as a result of his accident of May 1, 1960. The duty of the ship owner to pay an injured seaman lost wages is not an obligation arising out of the injury or illness, but is merely a matter of an "executory contract" arising out of the employer-employee relationship. Hazelton v. Luckenbach Steamship Co., D.C., 134 F.Supp. 525. Complainant was working at a salary of $20 per day and was paid only for days actually worked. He was paid on the fifteenth day of each month and on the last day of each month for the half month immediately preceding those paydays. Therefore, the wage payment period was the first day through the fifteenth day of each month, and the sixteenth day through the last day of each month. Since the Kishwaukee did not embark on any voyages while complainant was employed thereon, and since the complainant merely reported aboard each day for work and did not even live aboard the vessel, and since there were no written shipping articles or contract of employment, his employment could apparently have been terminated at any time either by the complainant himself or by the respondent. Therefore his recovery for wages must be limited to the period between the date of his injury and the end of the wage payment period in which he was injured. Fish v. Richfield Oil Corp., D.C., 178 F.Supp. 750. Since it was established that the plaintiff was paid for May 1, 1960, the day on which he was injured, he will be allowed to recover lost wages at the rate of $20 per day from May 2, 1960, through May 15, 1960, the end of the pay period in which he was injured, or the sum of $280.

### 5.

Even though the complainant did not specifically demand in his pleadings recovery of wages lost as a result of this accident and injury, nevertheless, it is proper for the Court to award such recovery if the claim is supported by

514

the evidence introduced at the trial of the case. Rules 15 and 54(c), Federal Rules of Civil Procedure, 28 U.S.C.A.

### CONCLUSION

Judgment will therefore be that complainant's demand for damages under the Jones Act, Title 46 U.S.C.A. § 688, will be denied, and complainant's demand for damages under the general maritime law for alleged unseaworthiness of the Kishwaukee will also be denied.

Judgment will be rendered in favor of complainant and against respondent for maintenance and cure in the sum of $999, and for wages in the sum of $280, or a total for maintenance, cure and wages of $1,279.

Judgment to be prepared and submitted by counsel for plaintiff.