838 So.2d 80 (2003)
Teddy CAMPBELL
v.
HIGMAN BARGE LINES, INC.
No. 02-0937.
Court of Appeal of Louisiana, Third Circuit.
February 5, 2003.
Writ Denied May 2, 2003.
*81 Clayton Davis, Lundy & Davis, L.L.P., Lake Charles, LA, for Defendant/Appellee, Higman Barge Lines, Inc.
Gary J. Arsenault, Neblett, Beard & Arsenault, Alexandria, LA, for Plaintiff/Appellant, Teddy Campbell.
Court composed of NED E. DOUCET, JR., Chief Judge, OSWALD A. DECUIR and MARC T. AMY, Judges.
AMY, Judge.
The plaintiff filed a maritime action following a work-related injury occurring aboard a vessel owned by the defendant. The defendant filed a motion for summary judgment, contending that the condition alleged to have caused the injury did not exist for a sufficient period of time for the imposition of liability under general maritime principles or the Jones Act. The trial court granted the motion for summary judgment. The plaintiff appeals. For the following reasons, we reverse and remand for further proceedings.

Factual and Procedural Background
On March 7, 1998, the plaintiff, Teddy Campbell, was employed on the M/V George H. Thomas, a barge owned by the defendant, Higman Barge Lines, Inc. The accident at issue in this maritime matter occurred when the defendant, a tankerman, was instructed to change the oil in the barge engines. In completing this task, Mr. Campbell and a co-worker, Andrew Tucker, descended into the engine room, filled buckets with oil, and began to ascend the steps from the engine room. Mr. Campbell alleges that, during the period of time the two were inside the room, the weather turned to rain, dampening the floor at the top of the stairs. He contends that he slipped on the wet floor, injuring his back.
The instant matter was filed on February 20, 2001. Mr. Campbell alleged the above accident, seeking recovery "under the "Saving[] to Suitors" clause, 28 U.S.C. § 1333,[1] the Jones Act (46 U.S.C.App. *82 § 688)[2] and the general maritime law.[3]" Mr. Campbell sought recovery related to what he contended was a permanently disabling injury. He alleged that the M/V George H. Thomas was unseaworthy and that the defendant was negligent in that hatches above the engine room were left open, exposing the stairs and floor to the elements and, in this case, causing them to be left in a wet condition. He also contends that the employer was negligent in failing to adopt a safer method of transferring oil than requiring employees to carry buckets of oil up the stairway.
The defendant filed a motion for summary judgment, asserting that Mr. Campbell would be unable to establish that it was negligent or that the vessel was unseaworthy. It contended that the wet condition alleged to be the cause of the accident existed only a few minutes prior to Mr. Campbell's fall, and that the employer cannot be responsible for correcting the condition given its short duration. Additionally, the defendant asserted that Mr. Campbell had reached maximum medical cure.
The trial court found in favor of the employer.[4] The plaintiff appeals, arguing *83 that genuine issues of material fact exist regarding unseaworthiness and Jones Act negligence. It also asserts genuine issues of fact remain regarding the maintenance and cure issue.

Discussion
La.Code Civ.P. art. 966 provides for summary judgment as follows:
A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. For good cause, the court shall give the adverse party additional time to file a response, including opposing affidavits or depositions. The adverse party may serve opposing affidavits, and if such opposing affidavits are served, the opposing affidavits and any memorandum in support thereof shall be served pursuant to Article 1313 at least four days prior to the date of the hearing unless there are local rules of court to the contrary. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
On review, summary judgments are considered de novo under the same criteria used by the trial court. Ross v. Conoco, 02-0299 (La.10/15/02); 828 So.2d 546.
We first address the issue of unseaworthiness. In reviewing the elements of an unseaworthiness claim, the Louisiana Supreme Court has explained:
The owner of a vessel has a duty to furnish a seaworthy vessel. This duty is absolute and nondelegable. Florida Fuels, Inc. v. Citgo Petroleum Corp., 6 F.3d 330, 332 (5th Cir.1993). It extends to a defective condition of the ship, its *84 equipment, or appurtenances. Phillips v. Western Co. of North America, 953 F.2d 923, 928 (5th Cir.1992). A ship's equipment and appurtenances include most objects and things on or attached to the vessel regardless of whether the item belongs to the ship or is brought aboard by a third party. See 1 Schoenbaum, supra, § 6-25, at 333-34.
A breach of the duty of seaworthiness gives rise to a claim for general damages. The plaintiff bears the burden of proving that "the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1354 (5th Cir.1988).
The test for determining unseaworthiness is one of reasonable fitness. The vessel, its equipment, and appurtenances need not be perfect, but all must be reasonably fit for their intended use. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960). Unseaworthiness, then, is a relative term dependent on the circumstances. For example, a valve stem wrapped in duct tape created an unseaworthy condition because it could no longer be opened by hand, the intended method of operation, to regulate the flow of liquid cargo. Gavagan v. United States, 955 F.2d 1016, 1018 (5th Cir. 1992). In contrast, an automatic valve that did not close completely did not constitute unseaworthiness when steam and hot water escaped from it and injured a worker. The court determined that its intended purpose was not to safeguard workers from escaping steam, but instead to maintain pressure inside the ship's boiler, and the automatic valve did not have to close completely to perform this function. Jordan v. United States Lines, Inc., 738 F.2d 48, 49-50 (1st Cir.1984).
Foster v. Destin Trading Corp., 96-0803, pp. 5-7 (La.5/30/97); 700 So.2d 199, 209 (on rehearing).
The trial court's reasoning in granting the motion for summary judgment rested on Mr. Campbell's testimony indicating that the rain began within the three to five minutes it took him to retrieve the oil and begin his ascent of the stairs. The court concluded that this timing left the crew with insufficient time in which to close the hatches and prevent the floor from becoming wet. Reference to the plaintiff's evidence indicates, however, that the basis for the plaintiff's unseaworthiness claim is the allegation that hatches above the stairway should not have been left open for ventilation purposes at all, exposing them to the elements in the event of rain.
In support of its motion for summary judgment, the defendant points to an excerpt from the plaintiff's testimony in which he explained that it was not raining at the time he descended into the engine room and that he spent three to five minutes filling the oil buckets. It argues that the crew could not have been expected to react and close the hatches within this period of time. It advances cases for the proposition that wet steps caused by exposure to the rain is an ordinary hazard encountered by vessels and one that requires seamen to adapt to these hazards. See 5-J's Towing, Inc. v. Verdin, 1994 WL 71280 (E.D.La.1994); Saleh v. United States of America, 849 F.Supp. 886 (S.D.N.Y.1994); and Creppel v. J.W. Banta Towing, Inc., 202 F.Supp. 508 (E.D.La. 1962).
In opposition to the motion for summary judgment, the plaintiff presented a number of depositions, including his own. He explained that he felt that the defendant was *85 negligent in not closing the hatches and, also, in not having an alternative method of pumping the oil up the stairs. He explained that other tugs have this type of pumping mechanism. The plaintiff also presented the Higman Personal Safety Manuel, which, under the Safety Rules section, subsection B(45), instructs, in part: "Keep all hatch covers secured when not conducting cargo operations." Additionally, the plaintiff offered the affidavit of Frank M. Buck, Sr., who he presents as an expert in the field of safe operations and navigation of motor vessels. Mr. Buck explained in the affidavit that he had reviewed documents, records, and depositions related to the accident. He also stated that he had interviewed Mr. Campbell and that he had personally inspected the M/V George H. Thomas and its tow, boarding the vessel and photographing the interior and exterior.
Regarding the issue of unseaworthiness, Mr. Buck opined:
The hatches were not being used for their indented [sic] purpose. The evidence revealed that the hatches were being used as a ventilation system which was not the purpose for which they were designed. My inspection revealed the engine room was equipped with a vent with an electric motor to push fresh air into the engine room and a second vent located on the back wall of the stack on the upper deck which was equipped with an electric motor and fan to pull the hot air out of the engine room. Hatches should not have been utilized as vents and, if they were, they were not fit for their intended purpose in that when it rained they allowed an accumulation of rain water on the catwalk and down in the engine room, causing an unseaworthy condition. Vents are designed to allow air to enter and/or escape from an area without allowing rain or water to enter the area.
Despite the defendant's contentions regarding the short duration of the rainfall, the expert's opinion creates a genuine issue of material fact as to whether the hatches should have been opened at all. Even if the defendant correctly asserts that the three to five minutes left insufficient time for the crew to respond, the question regarding whether the hatches were used for their intended purpose remains due to the above excerpt from the expert's affidavit. The expert examined the vessel, concluding that a ventilation system existed in the engine room and that the hatches were not being used for their intended purpose. The Louisiana Supreme Court has explained:
[D]espite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. See Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257 at pp. 16-17 (La.2/29/00), 755 So.2d 226, 236 (noting the court "must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion"); See also Hebert v. St. Paul Fire and Marine Ins. Co., 99-0333 (La.App. 4th Cir.2/23/00), 757 So.2d 814, cert. denied, 00-0861 (La.5/5/00), 761 So.2d 550. Under that standard, the lower courts erred in failing to find a genuine issue of material fact created by the inferences reasonably drawn from the expert's affidavit.
. . . .
Finally, and most importantly, when the party opposing the summary judgment motion submits expert opinion evidence that would be admissible and that is sufficient to allow a reasonable juror *86 to conclude the expert's opinion on a material fact more likely than not is true, the court should deny the summary judgment motion. Independent Fire, supra.

Willis v. Medders, 00-2507, pp. 2-3 (La.12/8/00); 775 So.2d 1049, 1050-51.
Our review of the plaintiff's submission in opposition to the motion for summary judgment, in particular, the affidavit of Frank Buck, indicates that it could allow a factfinder to consider his opinion more likely than not to be true. Mr. Buck offered his opinion as to the appropriateness of the hatches being used for ventilation. This issue is beyond that of whether the crew should have reacted in closing the hatches after the rainfall. Accordingly, summary judgment on the issue of seaworthiness is inappropriate. See Willis, 00-2507; 775 So.2d 1049; Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00); 755 So.2d 226.

Jones Act
In Foster, 96-0803; 700 So.2d 199, the Louisiana Supreme Court explained that, pursuant to 46 U.S.C. app. § 688 (1994), the Jones Act permits an injured seaman to pursue a negligence claim against an employer. "The employer's potential liability extends to all personal injuries arising during the course of the seaman's employment, but proof of negligence is essential to recovery." Id. at p. 3; 208. Furthermore:
Such negligence may arise in many ways including the failure to use reasonable care to provide a seaman with a safe place to work, the existence of a dangerous condition on or about the vessel, or any other breach of the duty of care. See Davis v. Hill Engineering, Inc., 549 F.2d 314, 329 (5th Cir.1977); 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 6-21, at 312 (2d ed.1994). The duty of care owed by an employer under the Jones Act is that of ordinary prudence, namely the duty to take reasonable care under the circumstances. Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335-36 (5th Cir.1997). The seaman bears the evidentiary burden of proving that a breach of the duty owed by the employer was a cause of his injuries.
Id. at pp. 3-4; 208.
Under the negligence theory of recovery, the plaintiff asserts that the crew was negligent in permitting the floors to exist in a wet condition, whether that be through the open hatches or whether that be from floors that, prior to being wet, existed in a greasy state. In opposition to the motion for summary judgment on this issue, the plaintiffs again presented Frank Buck's expert opinion in affidavit form. With regard to negligence, the affidavit provides:
A. Higman Barge Lines, Inc. is negligent for allowing Captain Hatfield and relief pilot, Steve Simon, to vent the engine room utilizing the hatches which were designed to allow the engines to be removed from the engine room without having to dismantle the vessel cabin.
B. Higman Barge Lines, Inc. is negligent for failing to adopt safe practices which would have eliminated the need to have the crew manually carry buckets of oil up the twenty-six inch wide, steep engine room stairs to change the oil on the barges. Fresh oil could have easily been stored on the stern of the vessel, on the barges, or even on the catwalk in the inner cabin near the top of the stairs where the accident in question occurred. This could have been completed through the use of fifty-five gallon drums or five gallon buckets of oil which the fuel *87 boat would have had readily available. Furthermore, at a very low cost, Higman Barge Lines, Inc. could have installed a pump with piping to pump the oil out of the engine room to the upper deck.
C. Hickman [sic] Barges [sic] Lines, Inc. is negligent for failing to use anti-skid paint on the catwalk at the top of the stairs leading from the engine room. Based upon the deposition testimonies reviewed, it appears that the catwalk had not been painted since September, 1997, at least six months prior to the accident in question. The photographs provided by the defendants and the video footage appear to show that the catwalk at the top of these stairs was worn to the point that they created an unsafe condition.
D. It was negligent for the captain and/or the pilot not to radio Mr. Campbell in the engine room when it began raining to advise that the hatches were open and rain may be gathering on the catwalk.
As it did under the theory of unseaworthiness, the affidavit provides a basis upon which a trier of fact could find in favor of the plaintiff. This renders the matter inappropriate for summary judgment. See Willis, 00-2507; 775 So.2d 1049; Independent Fire Ins., 99-2181, 99-2257; 755 So.2d 226. While the federal district court opinions cited by the defendant, and relied upon by the trial court, reference facts similar to the case at issue as they involved wet deck conditions, or an allegation of grease on the flooring, the facts of this case, as well as the allegations, may be viewed as distinguishable. In this case, the allegedly wet floor was one that would typically be dry, save for the open hatches, and expert testimony puts at issue whether the hatches were appropriately open at all. Additionally, the defendant's safety manual advises that the hatches are to remain closed. We also point out that only one of the cases advanced by the defendant, Saleh, 849 F.Supp. 886, which is from the Southern District of New York, involved a summary judgment. The other two cases relied upon by the defendant, 5-J's Towing, 1994 WL 71280 and Creppel v. Banta, 202 F.Supp. 508, were rendered following a full trial on the merits and are from the Eastern District of Louisiana. For these reasons, we conclude that summary judgment is inappropriate on the negligence question.

Maintenance and Cure
Finally, in response to the plaintiff's claim that he was entitled to continued maintenance and cure, the defendant asserted that no genuine issues of material fact exist with regard to whether any further surgeries or procedures will improve Mr. Campbell's condition.
Maintenance and cure is a duty imposed on a vessel's owner to provide food, lodging, and necessary medical services to a seaman who has become ill or injured while in service to the ship. Sims v. Wood Towing Co., Inc., 99-869 (La.App. 5 Cir. 2/16/00); 757 So.2d 783, writ denied, 00-1539 (La.6/30/00); 767 So.2d 41. Maintenance is compensation by way of a stipend to cover the costs associated with food and lodging, equivalent to that received on the vessel. Id. "Cure is payment of the seaman's medical, therapeutic and hospital expenses, until that point in time when plaintiff reaches maximum medical recovery." Id. at pp. 5-6; 788. Maximum cure is achieved when it appears the seaman's condition is incurable and future treatment will only relieve pain and suffering, not provide an improved physical condition. Navarro v. Aries Marine Corp., 97-1630 (La.App. 3 Cir. 4/29/98); 713 So.2d 613, writ denied, 98-1446 (La.9/4/98); 723 So.2d 958.
*88 In support of its motion on the issue of maintenance and cure, the defendant presented a letter from Mr. Campbell's treating physician, Dr. A.M. Khatri, to the claims adjuster, indicating that he feels the plaintiff has reached maximum medical improvement. Dr. Khatri explained:
[The plaintiff] was last seen in the office on April 12, 1999. His back pain remains about the same. He informed me that he was seen by a company physician in Houston and was suggested to consider another back surgery. He is reluctant to consider back surgery at present. He gave history of persistent back pain, minimal left leg pain and left hip pain, and improved numbness. He was placed on Celebrex 200 mg. daily. The patient is six months post-op lumbar laminectomy. I believe that he has reached maximum medical improvement and needs functional capacity evaluation and impairment rating.
Furthermore, in a deposition excerpt, Dr. Khatri explained that, at the time of the letter, there was nothing that could be done to improve the plaintiff's condition. He also explained that the surgery referenced in the above letter, would offer very little improvement and would not make the plaintiff pain-free.
In opposition to the motion for summary judgment on the maintenance and cure issue, the plaintiff presented the affidavit of Dr. Mark A. Hackbarth. Dr. Hackbarth explained that he examined the plaintiff on January 8, 2002 and found him not to be at maximum medical improvement. He stated that:
At this time, I recommend that Teddy Campbell have an implant of a spinal cord stimulation device on a trial basis to determine if he is a candidate for permanent implantation.
The recommended surgical implant is not merely palliative but is designed to relieve his pain, improve his medical condition, and improve his ability to pursue daily activities.
The plaintiff's own affidavit was also filed in which he states that he has considered Dr. Hackbarth's proposal and has "decided to move forward with the implantation of the spinal cord stimulator."
We do not consider whether the plaintiff will prevail on the merits. Instead, we consider only whether the evidence demonstrates that genuine issues of material fact exist. In light of Dr. Hackbarth's statement, regarding the possibility of improving the defendant's medical condition, we conclude that the defendant failed to demonstrate the absence of genuine issues of material fact on this issue. Accordingly, here too, summary judgment was inappropriate.

DECREE
For the foregoing reasons, the summary judgment entered by the trial court is reversed. All costs are assigned to the defendant, Higman Barge Lines, Inc. This matter is remanded for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] Article III, Section 2 of the United States Constitution provides federal district courts with jurisdiction in "all Cases of admiralty and maritime Jurisdiction[.]" Pursuant to the "saving to suitors" clause of 28 U.S.C. § 1333, which was enacted as a portion of the Judiciary Act of 1789, state courts have concurrent jurisdiction over some admiralty and maritime matters. See Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001). 28 U.S.C. § 1333 currently provides:

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.
(2) Any prize brought into the United States and all proceedings for the condemnation of property taken as prize.
(Emphasis added.)
[2] 48 U.S.C. app. § 688 provides, in part:

(a) Application of railway employee statutes; jurisdiction
Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.
[3] The United States Supreme Court has described the application of general maritime law as follows:

With admiralty jurisdiction comes the application of substantive admiralty law. Absent a relevant statute, the general maritime law, as developed by the judiciary, applies. Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modification of those rules, and newly created rules.
East River S.S. Corp. v. Transamerica Delaval, 476 U.S. 858, 864-65, 106 S.Ct. 2295, 2298-99[, 90 L.Ed.2d 865] (1986) (citations and footnote omitted).
Recovery for the unseaworthiness of a vessel has been recognized by the United States Supreme Court as part of the general maritime law. See The Osceola, 189 U.S. 158, 23 S.Ct. 483[, 47 L.Ed. 760] (1903).
[4] The trial court rendered the following written reasons:

The defendant, Higman Barge Lines, Inc., filed a Motion for Summary Judgment contending that the evidence does not support the imposition of liability. Specifically, that the accumulation of rainwater on interior steps of a vessel which occurred in 3-5 minutes and which allegedly caused the plaintiff to slip and injure himself does not constitute a "viable act of negligence" on the part of the defendant, the vessel owner, and employer.
This Court agrees. Conditions caused by inclement weather at sea are an ordinary hazard with which seamen must cope, even if they occur inside the vessel. To require a vessel owner to correct this ordinary hazard within 3-5 minutes of its occurrence would impose an onerous and impossible burden. This conclusion is supported by the reasoning found in the cases cited by the defendant [5-J's Towing, Inc. v. Verdin, 1994 WL 71280 (E.D.La.1994), Creppel v. J.W. Banta Towing, Inc., 202 F.Supp. 508 (E.D.La.1962), Saleh v. United States of America, 849 F.Supp. 886 (S.D.N.Y.1994)] and by common sense.
Furthermore, based on the evidence submitted regarding maintenance and cure, the Court finds that the plaintiff has reached maximum cure. If the plaintiff elects to have the surgery indicated, this issue will be revisited.
Motion for Summary Judgment is granted.