757 So.2d 814 (2000)
Lisa Ballantin HEBERT
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANIES, New Orleans Track Club, Inc., and the Road Runners Club Of America.
No. 99-CA-0333.
Court of Appeal of Louisiana, Fourth Circuit.
February 23, 2000.
Leonard J. Cline, Jr., Metairie, Louisiana, Attorney for Plaintiff.
J. Michael Daly, Jr., Law Offices of Robert E. Birtel, Metairie, Louisiana, Attorney for Defendants.
*815 (Court composed of Chief Judge ROBERT J. KLEES, Judge MIRIAM G. WALTZER, Judge MOON LANDRIEU, Judge PATRICIA RIVET MURRAY and Judge JAMES F. McKAY, III).
KLEES, Chief Judge.
Plaintiff, Lisa Hebert, filed this suit against the New Orleans Track Club (hereinafter "NOTC") to recover damages for injuries she sustained when she stepped into a pothole during a road race sponsored by the NOTC. Plaintiff alleged that the NOTC was negligent in failing to remedy a dangerous condition on the racecourse and in failing to warn plaintiff of that condition. Defendant moved for summary judgment arguing that it did not have custody of the roadway and that plaintiff had signed a waiver of liability prior to the race. On November 3, 1998, the trial court granted defendant's motion for summary judgment, dismissing plaintiff's suit. Plaintiff now appeals.
In November of 1996, the NOTC paid $100 to obtain a permit from the City of New Orleans to sponsor the "Old Man River Half-Marathon" in Algiers, and the New Orleans Police Department provided traffic control for the race. Plaintiff paid a $12.00 entry fee to participate in the race, and she signed a waiver of liability wherein she waived any and all claims which could be brought against NOTC.
Generally, the NOTC conducts prerace inspections of the racecourses to place signs, cones, or barricades around any potentially hazardous conditions. In support of its motion for summary judgment, the NOTC submitted the deposition of Chuck George, the Executive Director of the NOTC, who stated that he inspected the roadway and did not notice any hazardous conditions on the racecourse. According to Mr. George, the runners were advised prior to the race to be aware of any defects along the racecourse. Soon after the race began, plaintiff tripped and fell as a result of a pothole along the racecourse, and she sustained scratches, contusions and a fractured kneecap.
The trial court rendered judgment on November 3, 1998, granting defendant's motion for summary judgment. The trial court stated in its reasons for judgment as follows:
The court is of the opinion that the injuries the plaintiff sustained though unfortunate, were not occasion [sic] by fault of the defendant.
The Court further believes that the requisite care, custody, and control of the street on which the accident took place, which would make the defendant liable, was not present. The defendants merely procured a permit from the city to sponsor this race and obtaining a permit to use the street does not rise to the level of custody or control over the street to constitute garde. Russell v. Bissell, 562 So.2d 1059 (La.App. 1st Cir. 1990).
Finally, the Court is of the opinion that the plaintiff, Lisa Hebert executed a valid waiver, waiving any and all claims that she might have had against the defendant NOTC.
Plaintiff now appeals from this summary judgment arguing that defendant had custody of the roadway and that the waiver executed by plaintiff is void and unenforceable pursuant to Louisiana law.

Standard of Review
In determining whether summary judgment is appropriate, appellate courts review the evidence de novo. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. This standard of review requires the appellate court to look at "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," in making an independent determination that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ.Proc. Ann. art. 966 B; Young v. Oberhelman, 607 So.2d 719 (La.App. 4th Cir.1992). In *816 order to prevail on a motion for summary judgment, the movant must show "that it is quite clear as to what the truth is, and that excludes any real doubt as to the existence of material fact." South Central Bell Telephone Co. v. Sewerage and Water Bd., 94-1648 & 94-1649, p. 2 (La.App. 4 Cir. 3/16/95), 652 So.2d 1090, 1093, writ denied, 95-0949 (La.5/19/95), 654 So.2d 1090. Both the evidence and all inferences drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in his favor. Id. Taking into account these standards, we find that summary judgment is proper in this case.

Custody of the Roadway
Plaintiff asserts theories of liability based on La. C.C. arts. 2315, 2316 and 2317. La. Civ.Code art. 2317 imposes strict liability for damage caused by a defective thing in a defendant's custody. To hold defendant liable under article 2317, the plaintiff must prove: (1) the thing which caused the damage was in the care, custody and control of the defendant; (2) the thing had a vice or defect which created an unreasonable risk of harm; and (3) the injuries were caused by this defect. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990).
Article 2317 imposes liability based on custody, not ownership. Thumfart v. Lombard, 613 So.2d 286, 290 (La. App. 4th Cir.1993), writ denied, Montalbano v. Lombard, 617 So.2d 1182 (La.1993). Custody, distinct from ownership, refers to a person's supervision and control (garde) over a thing posing an unreasonable risk of harm. Id. (citing Loescher v. Parr, 324 So.2d 441, 446 (La.1975)). The Supreme Court has utilized a two-part test in determining whether the defendant has custody sufficient to impose article 2317 liability. First, the defendant must have right of direction and control over the thing. Second, the court must examine what, if any, kind of benefit the defendant derives from the thing. Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461, 464 (La.1991).
In the present case, the following facts are not disputed. The street on which plaintiff sustained injury was owned and maintained by the City of New Orleans. The NOTC applied for and obtained a city permit to use the designated streets for the time period in which the race was held. The NOTC advertised the race, established the course, collected entry fees and provided water and medical assistance.
In rendering judgment in favor of defendant, the trial court relied on the case of Russell v. Bissell & Associates, Inc., 562 So.2d 1059 (La.App. 1st Cir.1990). In that case, plaintiff was an employee of Exxon who was injured in a diving accident while attending an Exxon-sponsored picnic. Exxon provided games and door prizes at the picnic, but the owner of the premises agreed to provide the staff and food. In affirming summary judgment in favor of Exxon based on lack of custody of the premises, the Court relied on the following factors: Exxon did not own the premises where the accident occurred and there was no lease agreement between Exxon and the owner. Exxon was under no legal obligation to provide insurance coverage for the area, there was no indication Exxon assumed responsibility for the premises, and there was no "exercise of custody and control" over the premises by Exxon.
In arguing that the NOTC assumed custody of the street, plaintiff relies on the Supreme Court case of Rosenberger v. Central Louisiana Dist. Livestock Show, Inc., 312 So.2d 300 (La.1975), wherein the Court held a lessee of a rodeo facility liable for injuries sustained by a participant in the rodeo. In that case, the cause of plaintiffs injury was determined to be the negligence of the lessee's contracted supervisors in failing to properly secure a gate in the arena. The Supreme Court affirmed the trial court's judgment against the lessee, finding that the lessee "was in complete control and charge of all events occurring there and had no right under the *817 lease to sublease the premises." The Court based its finding of liability on the doctrine of respondeat superior, and held that the lessee was responsible for the negligent acts of those it hired to supervise the event.
Plaintiff also relies on Uhler v. Evangeline Riding Club, 525 So.2d 550 (La.App. 3rd Cir.1988), in which the Court reversed a summary judgment granted in favor of the sponsor of a horse show, finding that there were factual issues to be resolved regarding the sponsor's negligence and failure to warn of the hazardous condition. However, in that case, the sponsor of the horse show leased the horse area from its owner and had exclusive use of the entire facility during the horse show.
We have carefully reviewed the record in this case, including the depositions and affidavits of the parties, and conclude that the facts presented herein are more closely aligned with those considered in the case cited by the trial court, Russell v. Bissell & Associates, Inc., supra. Although the NOTC obtained a permit to hold the race on certain designated city streets, the permit did not transfer the care and custody of the entire racecourse to the NOTC. The city police department was present at the race for the purpose of traffic control. Although the NOTC inspects the course for hazardous conditions prior to the race, we reject plaintiff's contention that by this action the track club becomes the custodian of the entire racecourse. The $100 permit obtained in this case was similar to permits granted to carnival parade crews to use the city streets for a specified time period. There is no indication in these cases that the permit holder assumes complete responsibility for the condition of the entire route.
Unlike the Rosenberger case, there was no lease agreement between the City and the track club, nor was there a legal obligation to provide insurance coverage for the race. The NOTC merely obtained the requisite permit, advertised the race, collected the entry fees and set up the course. We fail to find that these actions constituted the exercise of custody and control over the entire racecourse sufficient to impose article 2317 liability. We conclude, as did the trial judge, that the NOTC is entitled to judgment as a matter of law.
Based on our holding herein, we need not reach the second argument asserted by plaintiff regarding the enforcement of the waiver of liability form.
Accordingly, for the reasons signed herein, the judgment rendered by the trial court in favor of the New Orleans Track Club and its insurer and against plaintiff Lisa Ballantin Hebert is affirmed.
AFFIRMED.
MURRAY, J., dissents and assigns reasons.
McKAY, J., dissents with reasons.
MURRAY, J., dissenting.
It is undisputed that the NOTC obtained a permit from the City of New Orleans to sponsor the race in Algiers in which Ms. Hebert was injured. It also is undisputed that the NOTC advertised the race, collected entry fees from race participants, including Ms. Hebert, and set up the racecourse. Mr. Chuck George, Executive Director of the NOTC, testified that the NOTC conducts pre-race inspections of its racecourses in order to identify potentially hazardous conditions and place signs, cones or barricades around those that are identified. Mr. George inspected the roadway for the race in which Ms. Hebert was injured, and did not notice any hazardous conditions. Ms. Hebert tripped and fell as a result of a pothole along the racecourse. Based on these undisputed facts, a fact finder could conclude that NOTC was negligent in the manner in which it inspected the racecourse or for having failed to mark the pothole that caused Ms. Hebert to fall. I, therefore, would reverse the summary judgment in favor of the NOTC.
*818 McKAY, J., dissenting.
I respectfully dissent with the majority opinion in this case and would reverse the trial court's granting of summary judgment.
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94) 634 So.2d 1180; Schroeder v. Board of Supervisors of La. State Univ., 591 So.2d 342, 345 (La.1991). A summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). All evidence and inferences drawn from the evidence must be construed in the light most favorable to the party opposing the motion. Carr v. City of New Orleans, 622 So.2d 819, 822 (La.App. 4 Cir.1993), writ denied, 629 So.2d 404 (La.1993). A motion for summary judgment is not appropriate for disposition of cases requiring a judicial determination of subjective facts, e.g., motive, intent, good faith, knowledge. Jefferson Parish School Bd. v. Rowley Co., Inc., 305 So.2d 658, 663 (La.App. 4 Cir.1974); Butler v. Travelers Ins. Co., 233 So.2d 271 (La.App. 1 Cir.1970).
In the instant case the trial court found that the injuries the plaintiff sustained were not occasioned by the fault of the defendants because the court believed that the requisite care, custody, and control of the street on which the accident took place, which would make the defendants liable, was not present. The trial court relied upon the First Circuit case of Russell v. Bissell & Associates, Inc., 562 So.2d 1059 (La.App. 1 Cir.1990). In that case, the Court of Appeal found that an employer, which sponsored a picnic and provided and installed bases for a softball game, ropes for paddleboat races and net for a volleyball game as well as giving away door prizes and providing a clown for entertainment, was nothing more than a patron of a recreational facility and did not have custody or control of the premises sufficient to incur liability to the injured employee.
In Rosenberger v. Central Louisiana District Livestock Show, Inc., 312 So.2d 300 (La.1975), a rodeo sponsor leased the premises. The rodeo sponsor was in complete control and in charge of all events occurring. They sold tickets for admission, collected the proceeds and hoped to make enough money from the rodeo to pay for the lease of the premises. On these facts the Louisiana Supreme Court determined that the rodeo sponsor was in complete control and charge of the rodeo. The Court stated:
The occupier of premises used for athletic events or amusements must maintain the premises in a reasonably safe condition and furnish such equipment or services as is necessary to minimize or prevent injury to others from conditions which probably, or forseeably may cause damage.
Id. at 305.
The same reasoning applied by the Supreme Court in Rosenberger was applied by our brethren in the Third Circuit in Uhler v. Evangeline Riding Club, 525 So.2d 550 (La.App. 3 Cir.1988). In that case, the Court of Appeal reversed a summary judgment and held that the sponsor of a horse show might be liable for an injury that resulted when a participant struck a guy-wire while practicing outside the arena.
In the instant case we are presented with a fact pattern that lays somewhere in between those presented to the Courts in Russell and Rosenberger. NOTC advertised the race and held it open to the public. NOTC paid the city for a permit to hold a race on a city street and charged entrants a fee. NOTC laid out the path of the race and inspected the roadway prior to the race. NOTC also provided water *819 stations along the course of the race. These actions seem somewhat more significant than those undertaken by the employer in Russell, because NOTC appears to be more than a "patron" of a facility. However, NOTC's actions do not appear to rise to the same level of "complete control" that existed in Rosenberger.
It appears to me that a genuine issue of material fact exists as to whether NOTC had garde of the road. Even if NOTC did not have garde of the road, questions exist as to whether NOTC owes a duty to those who enter its events to make sure that thy are reasonably safe and if so whether such duty to Ms. Hebert was breached. Accordingly, I believe it was improper for the trial court to grant summary judgment.