JASON KINCH

VERSUS

OUR LADY OF LOURDES REGIONAL MEDICAL CENTER, ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20133835
HONORABLE KRISTIAN D. EARLES, DISTRICT JUDGE

**********

**MARC T. AMY
JUDGE**

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and Marc T. Amy, Judges.

**AFFIRMED.**

Cooks, J., dissents and assigns written reasons.


Douglas K. Williams
Druit G. Gremillion, Jr.
Breazeale, Sachse & Wilson
Post Office Box 3197
Baton Rouge, LA   70821-3197
(225) 387-4000
COUNSEL FOR DEFENDANTS/APPELLEES:
    Our Lady of Lourdes Regional Medical Center, Inc.
    Dr. Kenneth Godeaux

**Jeffery F. Speer**
**George A. Wright**
**Doucet-Speer, APLC**
**Post Office Drawer 4303**
**Lafayette, LA   70502-4303**
**(337) 232-0405**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Jason Kinch**

**AMY, Judge.**

The plaintiff alleges that he suffered damages as a result of an emergency department doctor's failure to diagnose an infection and prescribe antibiotics upon his initial visit to the emergency room. The defendants filed a motion for summary judgment, contending that the plaintiff did not have appropriate expert medical testimony in support of his claim. The trial court granted the motion, and the plaintiff now appeals. For the following reasons, we affirm.

## Factual and Procedural Background

According to the record, on October 7, 2010, the plaintiff, Jason Kinch, reported to the emergency department at Our Lady of Lourdes Regional Medical Center, Inc. Mr. Kinch complained of fever, chills, nausea, vomiting, and weakness. Mr. Kinch also alleges that he was experiencing pain in his lower right leg, which started after he was bitten or scratched while in the woods the previous evening. He was treated by Dr. Kenneth Godeaux, who reviewed Mr. Kinch's lab work and examined his leg. According to Mr. Kinch, Dr. Godeaux squeezed Mr. Kinch's leg and told him that he had a pulled muscle. Dr. Godeaux prescribed a painkiller, an anti-nausea medication, and an anti-allergy medication and discharged Mr. Kinch with instructions to follow up with a primary care provider as needed and return to the emergency department if he became worse in any way.

On October 10, 2010, Mr. Kinch returned to the emergency department. His medical records from that visit indicate that he had developed significant erythema, pain, and swelling in his lower right extremity. Notes from Mr. Kinch's medical records indicate that his lower right calf area was very swollen—approximately three times the size of his other lower extremity. Mr. Kinch was admitted to the hospital and ultimately diagnosed with cellulitis of the lower right extremity,

compartment syndrome, and fasciitis. The treatment for these conditions necessitated an eleven-day hospital stay and multiple surgeries, including skin grafts.

Mr. Kinch contends that it was "highly likely" that his symptoms present at his October 7 emergency department visit were manifestations of the cellulitis, compartment syndrome, and fasciitis diagnosed three days later. Mr. Kinch alleges that Dr. Godeaux failed to properly diagnose and treat his "obvious" infection during that first visit. According to the record, Mr. Kinch sought review of his claims by a medical review panel. However, the medical review panel expired before it issued an opinion. Thereafter, Mr. Kinch filed suit against Dr. Godeaux (through Kenneth B. Godeaux, M.D., LLC) and Our Lady of Lourdes. The defendants filed a motion for summary judgment on the basis that Mr. Kinch did not have sufficient expert medical testimony to establish that the defendants breached the standard of care and caused injury to Mr. Kinch. The record indicates that, at the time the defendants filed the motion for summary judgment, Mr. Kinch did not have any expert testimony.

However, Mr. Kinch retained an expert, Dr. Shannon Stinson, before the hearing on the motion for summary judgment. Mr. Kinch initially submitted an unsigned letter report from Dr. Stinson, to which the defendants filed an objection on the basis that it did not constitute competent evidence. At the hearing, Mr. Kinch offered Dr. Stinson's affidavit which purported to verify the unsigned letter report.[1] Although Mr. Kinch did not offer a *curriculum vitae* for Dr. Stinson, her

---

[1] The transcript of the hearing on the motion for summary judgment indicates that Mr. Kinch's attorney had a signed copy of Dr. Stinson's letter report. However, our review of the record only reveals the unsigned copy attached to Mr. Kinch's opposition to motion for summary judgment. *See* La.Code Civ.P. art. 966(F)(2).

2

affidavit indicated that she is dual Board-certified in emergency medicine and clinical informatics. Dr. Stinson also opined that the care, or lack thereof, rendered to Mr. Kinch represented a breach of the standard of care required of an emergency room physician. In her attached letter report, Dr. Stinson also indicated that the breach "certainly did cause increased morbidity, although the extent of which it contributed to this is indeterminate."

The defendants objected to both Dr. Stinson's letter report and late-filed affidavit. The trial court admitted both into evidence, but found, however, that they were not "sufficient to establish the proof needed." Accordingly, the trial court granted the motion for summary judgment and dismissed Mr. Kinch's claims with prejudice.

Mr. Kinch appeals, asserting as error that:

> 1. The trial court erred in its application of the shifting summary judgment standard detailed in La.C.C.P. art 966.

> 2. The trial court erred in finding that there was no genuine issue of material fact generated by Dr. Stinson's report.

## Discussion

*Summary Judgment*

The motion for summary judgment procedure is favored in our law and is designed to secure the just, speedy, and inexpensive determination of actions. La.Code Civ.P. art. 966(A)(2). The grant or denial of a motion for summary judgment is reviewed de novo. *Schultz v. Guoth*, 10-343 (La. 1/19/11), 57 So.3d 1002. The appellate court uses the same criteria as the trial court when determining whether summary judgment is appropriate, i.e., there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of

3

law, the motion shall be granted. *Id.*; La.Code Civ.P. art. 966(C)(1). Further, although the burden of proof remains with the movant,

> if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P. art. 966(C)(2).

Thus, although the moving party initially bears the burden of submitting evidence at the hearing, he may meet that burden by pointing out the lack of factual support for an essential element of his opponent's case. *Schultz*, 57 So.3d 1002. Thereafter, the party bearing the burden of proof at trial (usually the plaintiff) must produce sufficient evidence to demonstrate that he will be able to meet his burden of proof at trial. *Id.* Should he fail to do so, La.Code Civ.P. art. 966(C)(2) mandates the granting of the motion for summary judgment. *Id.*

In a medical malpractice action, the plaintiff must prove, by a preponderance of the evidence: 1) the standard of care applicable to the defendant(s); 2) that the defendant(s) breached that standard of care; and 3) that there is a causal connection between the breach and the resulting injury. *Schultz*, 57 So.3d 1002; La.R.S. 9:2794. When causation is at issue, the medical malpractice plaintiff need not prove that the defendant's conduct was the only cause of his harm, but must show that, as a result of the defendant's negligence, it is more probable than not that he suffered injuries because of the defendant's conduct. *Bianchi v. Kufoy*, 10-607 (La.App. 3 Cir. 12/8/10), 53 So.3d 530.

4

Generally, expert testimony is required to establish the applicable standard of care and whether that standard was breached. *Rogers v. Hilltop Ret. & Rehab. Ctr.*, 13-867 (La.App. 3 Cir. 2/12/14), 153 So.3d 1053. However, in cases where the negligence is so obvious that a lay person can infer negligence, e.g., where a physician amputates the wrong arm or leaves a sponge inside a patient's body, expert testimony is not required. *Pfiffner v. Correa*, 94-924, 94-963, 94-992 (La. 10/17/94), 643 So.2d 1228.

Here, the defendants pointed out that Mr. Kinch had no expert testimony to support his claims and provided Mr. Kinch's discovery responses to that effect. Having reviewed the record, we conclude that the facts of this case are such that the alleged negligent acts are not so obvious that causation can be inferred, and that expert testimony is required to establish the standard of care, breach, and causation. Accordingly, we find that the defendants successfully pointed out a lack of factual support for the elements of Mr. Kinch's medical malpractice claim.

Thus, we find no error in the trial court's application of the burden of proof as described in La.Code Civ.P. art. 966(C)(2). Accordingly, in order to survive the defendants' motion for summary judgment, Mr. Kinch is required to "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." *Id.* The record indicates that, after the defendants filed their motion for summary judgment, Mr. Kinch retained Dr. Stinson and submitted her affidavit and expert report into evidence.[2]

---

[2] Finding that Dr. Stinson's affidavit and expert report are insufficient to defeat summary judgment in this instance, we do not reach the question of whether her affidavit and the unsigned letter report contained in the record constitute competent summary judgment evidence. *See*, e.g., La.Code Civ.P. art. 967; *Lejeune v. Louisiana Med. Mut. Ins. Co.*, 13-845 (La.App. 3 Cir. 2/12/14), 153 So.3d 1021, *writ denied*, 14-519 (La. 4/25/14), 138 So.3d 646; *Albers v. Vina Family Med. Clinic*, 12-1484 (La.App. 4 Cir. 5/22/13), 116 So.3d 940.

Dr. Stinson's affidavit indicated that she is dual Board-certified in emergency medicine and clinical informatics and that the letter report was her opinion in Mr. Kinch's case. Dr. Stinson opined therein that "the care, or lack of care, rendered to Mr. Jason Kinch represents a breach of the standard of care required of an Emergency Medicine physician." The letter report, which was attached to Mr. Kinch's opposition to the defendant's motion for summary judgment, indicated that Dr. Stinson reviewed Mr. Kinch's medical records. Dr. Stinson noted that at his initial emergency department visit on October 7, Mr. Kinch reported complaints of "chills, fever, n/v [nausea and vomiting], generalized weakness, [and] also injured right leg last night at work." Dr. Stinson also stated:

> While in the Emergency Department on 10/7/2010, Mr. Kinch's complaints of fevers, chills, and right leg pain were undocumented by Dr. Godeaux in either the HPI or ROS sections (although were pulled in as "additional information" from the triage record), and, other than the abnormal vital signs from triage, "slight dry oral mucosa", and tachycardia, a normal physical exam was also documented. Of note, the ROS section was documented as "all other systems reviewed and otherwise negative", thereby leaving out any mention of fevers, chills, or leg pain. 1 mg Dilaudid, a strong pain medication, was ordered, but it is unclear if this was for the abdominal cramping mentioned in the HPI (although no abdominal pain on exam) or for leg pain that was documented only in the triage record.

> Mr. Kinch had several objective signs of infection, including tachycardia (heart rate of 117), fever (temperature 100.4F), tachypnea (respiratory rate 24), and leukocytosis (WBC 14.2). In many cases, antibiotics would be given either in the Emergency Department or upon discharge for these signs despite no clear, documented reason for their cause. Upon discharge, patient was given instructions for nausea and vomiting as well as a prescription for Phenergan (for nausea) and Zyrtec (normally for allergies, but it is unclear why it was prescribed in this setting), but there was again no mention or treatment of the leg pain, fever, or leukocytosis and their cause.

Dr. Stinson concluded in her letter report that:

> An emergency medicine physician has a duty to medically screen and treat (as necessary) a patient's complaints. It is highly likely that the presenting signs and symptoms on 10/7/2010 were early

manifestations of the cellulitis, compartment syndrome, and abscess that were subsequently treated and operated on during the admission from 10/10/2010 through 10/21/2010. It is more likely than not that a three-day delay in treatment will increase morbidity. The failure of the emergency room physician to treat the patient's infection with antibiotics was a breach of the standard of care for a reasonable emergency room physician. The breach certainly did cause increased morbidity, although the extent of which it contributed to this is indeterminate.

Having reviewed this evidence, we must conclude that it is insufficient to produce factual support sufficient to establish that Mr. Kinch will be able to satisfy his evidentiary burden of proof at trial. Dr. Stinson's affidavit is conclusory in that it merely states that Dr. Godeaux breached the standard of care and fails to specifically address causation. *See Tillman v. Eldridge*, 44,460, p. 15 (La.App. 2 Cir. 7/15/09), 17 So.3d 69, 79 ("[An] affidavit that is merely conclusory is insufficient to serve as evidence; affidavits that are devoid of specific underlying facts to support a conclusion of ultimate 'fact' are not considered legally sufficient to defeat summary judgment.").

In her letter report, Dr. Stinson notes that Dr. Godeaux failed to document any examination of Mr. Kinch's leg. However, we observe that Mr. Kinch's deposition testimony, which was part of the evidence submitted in support of the motion for summary judgment, indicates that Dr. Godeaux did examine Mr. Kinch's leg. Further, Dr. Stinson does not associate any failure to document with any damages to Mr. Kinch.

Further, we find that Dr. Stinson's report is speculative such that it is insufficient to satisfy Mr. Kinch's burden of proof. *See Foster v. Patwardhan*, 48,575, 48,712 (La.App. 2 Cir. 1/22/14), 132 So.3d 495, *writ denied*, 14-614 (La. 4/25/14), 138 So.3d 1233. Mere speculation will not defeat a motion for summary judgment, and conclusory allegations, improbable inferences, and unsupported

7

speculation are insufficient to support a finding that a genuine issue of material fact exists. *Scott v. City of Shreveport*, 49,944 (La.App. 2 Cir. 6/24/15), 169 So.3d 770. Dr. Stinson concludes in her letter report that it was a breach of the standard of care for an emergency room physician to fail to treat the patient's infection with antibiotics. However, she previously stated that it would be appropriate to prescribe antibiotics "*in many cases*" (emphasis added) and does not address whether those cases in which antibiotics would not be prescribed apply to the facts of this case. Finally, Dr. Stinson asserts that Dr. Godeaux's failure to prescribe antibiotics "certainly did cause increased morbidity, although the extent of which it contributed to this is indeterminate." We observe that Dr. Stinson offers no objective basis for this opinion, especially given her earlier qualification of the emergency department's duty to prescribe antibiotics, and she is unable to determine how much that failure caused an increase in Mr. Kinch's damages. Given these ambiguities, we find that Dr. Stinson's expert report is insufficient to defeat summary judgment.

Accordingly, we find no merit to Mr. Kinch's assignments of error.

### DECREE

For the foregoing reasons, we affirm the judgment of the trial court granting the motion for summary judgment filed by the defendants, Our Lady of Lourdes Regional Medical Center, Inc., and Kenneth B. Godeaux, M.D., LLC. All costs of this proceeding are assessed to the plaintiff, Jason Kinch.

**AFFIRMED.**

8

JASON KINCH

VERSUS

OUR LADY OF LOURDES REGIONAL
MEDICAL CENTER, ET AL.

**COOKS, J., dissenting.**

Jason Kinch (Plaintiff), a thirty-four year old Lafayette Parish Deputy Sheriff, was injured while on duty. On October 7, 2010, he sought medical attention at the Emergency Room (ER) of Our Lady of Lourdes Regional Medical Center (Lourdes) in Lafayette, Louisiana. Medical records indicate when he arrived at the ER he had, "nausea/vomiting; chills, fever, N/V[nausea/vomiting], generalized weakness, also injured RT leg last night at work." This information appears in the "ED Physician Notes" of Dr. Godeau who examined Plaintiff in the ER. Plaintiff's medical records from Lourdes regarding his first visit to the ER also indicate additional symptoms which included CBC (Complete Blood Count) results showing a "high" white blood cell count, "pain in his right leg", elevated blood pressure, elevated respiratory rate, and a temperature of 100.4°F. After examining Plaintiff, Dr. Godeau gave orders for: "CBC with differential, CMP [comprehensive metabolic panel], Ua [urinalysis], Dilaudid 1 mg IV' Zofran 8 mg IV, and 1 liter NS." Dr. Godeau discharged Plaintiff with a "diagnosis" of nausea and vomiting, a prescription for Zyrtec 10 mg (a sinus medication) and Phenergan

25 mg (for nausea) with instructions to follow up with his regular primary care physician and "return to the ER if worse in any way." On October 10, 2010, Plaintiff returned to Lourdes' ER and was admitted to the hospital with cellulitis in his right lower extremity. He was placed on IV antibiotics, and scheduled for surgery consult. He then underwent a "fasciotomy, debridment, I&D, and skin grafting" as a result of an infection in his right leg.

The majority finds Plaintiff's expert, Dr. Shannon Stinson (Dr. Stinson), does not present sufficient proof in her affidavit and/or letter attached thereto for Plaintiff to establish there is any genuine issue of material fact precluding summary judgment. Defendants objected to the introduction of Dr. Stinson's unsigned and unverified letter and her subsequent affidavit attesting to the letter's authenticity and accuracy. In the letter, the doctor recites her expert opinion regarding Plaintiff's medical care by Lourdes and Dr. Godeau. The trial court admitted both the letter and affidavit in evidence at the hearing on the motion. *Defendants did not challenge that ruling.* Nevertheless, the majority states in a footnote that it does not address the question of whether Dr. Stinson's affidavit and unsigned, unverified letter are competent summary judgment evidence because it finds, even if considered, Dr. Stinson's affidavit and report are insufficient to defeat summary judgment in this case. I disagree.

The majority sets forth Plaintiff's burden of proof at a trial on the merits in this malpractice case, *i.e.*, Plaintiff must prove the standard of care; a breach of that standard; and a causal connection between the breach of care and Plaintiff's injury, all by a preponderance of evidence. Relying on this court's holding in *Bianchi v. Kufoy,* 10-607 (La.App. 3 Cir. 12/8/10), 53 So.3d 530, the majority further finds Plaintiff "need not prove that the defendant's conduct was

2

the only cause of his harm, but must show that, as a result of the defendant's negligence, it is more probable than not that he suffered injuries because of the defendant's conduct." I agree that these are correct legal precepts applicable *at the trial on the merits.*

The majority, like many appellate panels, misconstrues Plaintiff's burden of proof on summary judgment.[1] In *Willis v. Medders*, 00-2507, p. 3, (La. 12/8/00), 775 So.2d 1049, 1051 (emphasis added), the supreme court explained this burden of proof in clearer terms than the language used in the code of civil procedure and more clearly pointed out how the non-moving party may meet its burden on summary judgment:

> [W]hen the party opposing the summary judgment motion submits expert opinion evidence that would be admissible and that is *sufficient to allow a reasonable juror to conclude* the expert's opinion on a material fact more likely than not is true, the court should deny the summary judgment motion. *Independent Fire Insurance Co. v. Sunbeam Corp.*, 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226.

That is precisely what Plaintiff did in this case. Defendants did not file any pretrial motion seeking to prevent Dr. Stinson from testifying as an expert at trial or from rendering her opinion on the basis that it was based on some flawed methodology or other scientific error. Defendant's only objection to the doctor's expert opinion was that it was not submitted in proper form. That objection was cured by the subsequent filing of the affidavit prior to the hearing of the summary judgment motion. For now, the doctor's report is supported by 524 pages of Plaintiff's medical records, professional publications, and a detailed account of the doctor's expertise in emergency room medical care. Her opinion is sufficiently

---

[1] Stated generically, once Defendant, as the moving party, has met its burden of proof on summary judgment, the Plaintiff as non-moving party must "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." La. CodeCiv.P. art. 966(C)(2). *Darryl Samaha v. David J. Rau, M.D.* 07-1726 (La. 2/26/08), 977 So.2d 880.

3

grounded to allow a reasonable juror to conclude 1) what was the standard of care in this case; 2) that Defendant breached the standard of care; and 3) Defendant's breach caused injury to Plaintiff. Defendant offered no countervailing evidence but merely supported its Motion for Summary Judgment on the assertion that because Plaintiff had not disclosed an expert witness in his response to discovery pleadings he would not be able to carry his burden of proof at trial. But this was not the posture of the case by the time the motion was heard. As noted, Plaintiff, by that date, secured an expert whose opinion was accepted as evidence in the record. Defendant could no longer stand mute. Defendant did not attack the expert's qualifications[2] nor did Defendant present any expert of its own to give an opinion as to what the standard of care is in this case other than that articulated by Plaintiff's expert. If the standard of care is as Dr. Stinson correctly set forth, a fact which we must accept as the uncontroverted truth at this point, then there is no dispute Defendant breached this standard by not prescribing antibiotic to Plaintiff and there is enough evidence to conclude harm was caused to the Plaintiff, albeit a genuine issue still exists as to the "degree or extent of the harm" caused to him as a result of the breach. Arguments in briefs are not evidence and can never satisfy the evidentiary burden of parties on summary judgment. Defendant has the burden, as the mover on summary judgment, to "show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. Code Civ.P. art. 966(B)(2). The Code of Civil Procedure further provides: "The burden of proof remains with the movant." La.Code Civ.P. art. 966 (C)(2). *The movant must successfully "point out to the court that there is an absence of factual support*

---

[2] Defendant did not file a motion in limine seeking to exclude Dr. Stinson's report or testimony.

for one or more elements essential to the adverse party's claim, action, or defense." *Id.* *It is only after the mover succeeds in making this showing* that the opposing party must "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." *Id.* The majority in this case falls into the same error as did the Fourth Circuit in *Willis*. In that case, the appellate court "chastised the expert's affidavit as being 'very vague' and containing 'general statements' from which it refused to infer the specifics needed to defeat the defendant-manufacturer's summary judgment motion." *Willis,* 775 So.2d at 1050. As the supreme court explained in *Willis, Id*. (emphasis added):

> The court of appeal erred in several respects. First, despite the legislative mandate that summary judgments are now favored, **factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor**. *See Independent Fire Insurance Co. v. Sunbeam Corp.,* 99-2181, 99-2257 at pp. 16-17 (La.2/29/00), 755 So.2d 226, 236 (noting **the court "must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion**"); *See also Hebert v. St. Paul Fire and Marine Ins. Co.,* 99-0333 (La.App. 4th Cir.2/23/00), 757 So.2d 814, *cert. denied,* 00-0861 (La.5/5/00), 761 So.2d 550. Under that standard, the lower courts erred in failing to find a genuine issue of material fact created by the inferences reasonably drawn from the expert's affidavit.

Likewise, in this case, the majority engages in the same flawed rationale and errs in concluding that summary judgment is appropriate. The majority accepts for purposes of its treatment of Plaintiff's evidence on summary judgment that Dr. Stinson is Board Certified in emergency medicine and clinical informatics and accepts her letter report, accompanied by her affidavit, as her expert opinion. Nevertheless, the majority finds Dr. Stinson's affidavit contains merely conclusory statements made without stating specific underlying facts to support her conclusions. The majority further finds her report "speculative," and based on "improbable inferences." This, says the majority, is insufficient to defeat

5

Defendants' motion for summary judgment. First, I suggest that all experts are retained to make conclusions based on their expertise. Secondly, the record on summary judgment does not support the majority's conclusions. Dr. Stinson's opinion is not merely conclusory nor is it speculative and it is certainly not based on "improbable inferences." The medical record introduced at the hearing, and relied on by Dr. Stinson, established Dr. Godeau examined Plaintiff's injured leg in the first ER visit and knew Plaintiff had "several objective signs of infection." As noted by Dr. Stinson in her report, the hospital records show these signs included "tachycardia (heart rate of 117), fever (temperature of 100.4F), tachypnea (respiratory rate 24), and leukocytosis (WBC 14.2)." Dr. Stinson states: "In many cases, antibiotics would be given either in the Emergency Department or upon discharge for these signs despite no clear, documented reason for their cause." The majority finds her use of the phrase "in many cases" to be merely speculative because Dr. Stinson "does not address whether those cases in which antibiotics would not be prescribed apply to the facts of this case." I take her statement to mean something very different, especially when one considers her entire thought process, *i.e.* that in *many* cases even *without* clear, documented reason to suspect an infection, an antibiotic *would* be prescribed when a patient presents with the symptoms exhibited by Plaintiff. **Plaintiff did have clear, documented reasons to treat for an infection. Yet, Dr. Godeau failed to do so**. This, says Dr. Stinson, falls below the standard of care. The standard of care does not mean "all or 100%" of the doctors must or do follow it. It is simply the "best practice." It stands to reason in "some" instances, for whatever reason, doctors may elect not to follow the standard generally followed by "many" doctors in the given field. Those who elect not to follow the accepted standard of care have the added burden

of explaining their decision to deviate from it. So that in "some" instances, for example, a doctor may find the use of antibiotics would present a greater danger to the patient's health or the patient's history suggest causes, other than an infection, for his elevated white blood cell count and high temperature readings. This was the Defendants' burden to prove not the Plaintiff's burden to disprove. Defendant merely asserted his actions did not fall below the standard of care. He offered no expert opinion or other evidence in support of his position.

Further, the majority's hypertechnical interpretation of Dr. Stinson's use of the phrase "in many instances" is clear error. It is obvious from reading the whole of the doctor's report that in her opinion, in this case, that doctor's failure to prescribe antibiotics deviated from the standard of care practiced in "many cases." I reiterate the supreme court's admonition to the appellate courts: "**the court must draw [ ] inferences from the undisputed facts which are most favorable to the party opposing the motion [for summary judgment]**." *Willis,* 775 So.2d at 1050 (emphasis added). Moreover, the majority, like the appellate court in *Willis* (emphasis added):

> [errs] in assessing the persuasiveness of plaintiff's expert's views on summary judgment. *See Independent Fire*, 755 So.2d at 236 (noting that '**the court must not attempt to evaluate the persuasiveness of competing scientific studies' on summary judgment in performing its gate keeping function**). The **court of appeal's focus on how the plaintiff's expert could have been 'more persuasive' and on what his expert 'did not say' was misplaced.** Properly viewed, plaintiff's expert stated that the proposed alternative design was being used, and one could reasonably infer from his statement that such alternative was economical, *i.e.* satisfied the risk-duty analysis.

The majority here engages in the same misplaced focus. As noted, the question here is a simple one: Does the evidence put forth by Plaintiff provide a reasonable basis for finding it is a general practice among physicians in the

medical community to administer antibiotics to patients with clinical findings such as presented by the Plaintiff, even though the underlying cause of the infection was unknown. If so, Plaintiff certainly presented sufficient evidence for a jury to find Defendant breached the standard by not prescribing antibiotics, and Plaintiff suffered harm. The majority is not free to assess the persuasiveness of the doctor's opinion or to ferret out what she "did not say."

The majority also takes issue with Dr. Stinson's statement that "Dr. Godeau's failure to prescribe antibiotics 'certainly did cause increased morbidity, although the extent of which it contributed to this is indeterminate," finding again that Dr. Stinson "offers no objective basis for this opinion, especially given her earlier qualification of the emergency department's duty to prescribe antibiotics, and she is unable to determine how much that failure caused an increase in Mr. Kinch's damages." The majority reasons that "given these ambiguities" it cannot find the report sufficient to defeat summary judgment. The majority reaches this conclusion despite acknowledging that "[w]hen causation is at issue, the medical malpractice *plaintiff need not prove that the defendant's conduct* was *the only cause of his harm*, but must show that, as a result of the defendant's negligence, it is more probable than not that he suffered injuries because of the defendant's conduct," (emphasis added) citing *Bianchi v. Kufoy*. Plaintiff has presented evidence on summary judgment sufficient to show he will prevail at trial in showing *Defendant's conduct caused him some degree of harm*. It is not necessary on summary judgment that Plaintiff show the exact degree of harm. I read Dr. Stinson's expert opinion to say "it is more likely than not" that the "three-day delay in treatment" caused increased morbidity. That she is unable to say just to "what exact degree or extent" it increased morbidity is of no moment on summary

8

judgment. Again, as the supreme court instructs us, we *"must draw those inferences from the undisputed facts which are most favorable to the party opposing"* summary judgment. *Willis*, 775 So.2d at 1050 (emphasis added).

I also disagree with the majority's finding that Dr. Stinson "offer[ed] no objective basis for this opinion." At the close of her report Dr. Stinson lists "Information Considered in Formulating the Above Opinion" which she details as:

1.  Extensive hospital records totaling 524 pages, specifically including the triage assessment, Dr. Godeau's documentation, orders, and discharge summary from 10/7/2010 as well as the admission History and Physical (documented on 10/11/10), consultation from Dr. Odinet (consult date 10/11/10). Operative reports from Dr. Odinet (operations performed on 10/11/10 and 10/20/10), and the discharge summary authored on 10/22/2010.

2. A reference for defining SIRS, Sepsis, and Septic Shock(citation omitted)

3. Duties of an Emergency Medicine Physician (citation omitted)

4. Training and experience as an Emergency Medicine physician.

She also states in her affidavit she relied on (1) her personal knowledge; (2) Kinch's medical records, and (3) physician references. In her affidavit Dr. Stinson specifically states (emphasis added):

> I am the same SHANNON STINSON that prepared a report dated January 21, 2015, styled 'Re: Jason Kinch v. Our Lady of Lourdes regional Medical Center, Inc. And Dr. Kenneth B. Godeaux.' I verify that the report represents my opinion on the medical care, or lack thereof, rendered to Mr. Jason Kinch on October 7, 2010 at Our Lady of Lourdes Regional Medical Center, *based upon my personal knowledge and education, Mr. Kinch's medical records, and various physician's references.*
>
> As noted in my report, the care, or lack of care, rendered to Mr. Jason Kinch representes a breach of the standard of care required of an Emergency Medicine physician.

9

I am dual Board-certified in Emergency Medicine and Clinical Informatics."

In her written report, *Dr. Stinson refers in detail to the evidence in Kinch's medical records* from his first ER visit at Lourdes upon which she bases her expert opinion that Dr. Godeau's treatment of Kinch fell below the standard of care. She states "it is more likely than not" that Godeau's failure to treat with antibiotics resulted in some degree of harm to Plaintiff, to be determined on a full trial of the merits considering all evidence. It is not necessary that she use the magic legal incantation "it is more probable than not" as it seems clear to me that her use of "more likely than not" means the same. The supreme court's instruction in *Willis* makes it clear that this is especially so on summary judgment. Further, this matter was not the trial. This summary judgment proceeding should not be used to supplant Plaintiff's right to a full trial on the merits. He needed only to make a showing at this preliminary stage that he has a reasonable shot at presenting enough evidence at trial to satisfy his burden of proof. In my view he succeeded in making this showing and more. This case is not ripe for summary judgment in favor of Defendant. For the reasons as stated I respectfully dissent.